I think we'll just wait for a moment to get Judge Aldersdorf back with us. Ruge, you back? Can you hear me? Yes, we can hear you. Am I getting through? We are hearing you. Yes, we hear you perfectly. Thank you. We're going to call the last case of the day, number 09-1575, United States v. Stadtmauer, Mr. Estrada and Mr. Sanders. Good afternoon, Your Honor. I would like to reserve five minutes for a rebuttal. Thank you. Of your five arguments, maybe, and this is just me asking, it seems to me that the Beretsky point of argument, the lay opinion point, or what his understanding was, and the last point on willful blindness, if you could address those first, if you wouldn't mind. Thank you, Your Honor. It was my plan to start with willful blindness and to go directly to the other argument. That would be great. So those are the ones that I had picked. Let me start by saying that the central issue in this case was specific intent, and all of those five arguments in our judgment stemmed from the government's successful efforts to make its burden of proving that element of the crime more lighter than the law actually allows. The clearest example is the willful blindness instruction, because we know from the Supreme Court's opinion in Cheek that willful blindness requires actual knowledge of the relevant legal requirement and a purpose to disobey the law. It looks as if on pages appendix 3973 and 3974 that he's attempting to talk about knowledge, but then he throws in the seventh out of the eighth paragraphs there, knowingly and willfully. He probably should not have used that word willfully. Well, I think that there are fundamental problems in each paragraph of the instruction. But on the paragraph that you just mentioned, let me point out that it comes in the paragraph that sums up the input of the instructions with the word therefore, as I recall. Yeah, therefore, you may find it. Right. It looked to me almost as if it was almost a carry-on from the last sentence in the preceding paragraph, that you must find instead the defendant was actually aware of a high probability that tax returns were false or fraudulent as to a material matter and deliberately avoided learning about it. Now, that seems to be fine, and then he goes, therefore, you may find that the defendant acted knowingly and willfully if you find beyond a reasonable doubt either that he actually knew that the tax returns were false or fraudulent as to a material matter or that he deliberately closed his eyes to what he had every reason to believe. It's the words and willfully that caused the problem. But before I ask other questions, let's go back. What other paragraphs in that willful blindness instruction on those two pages do you perceive that either the word willfully was used or something akin to the word willfully was used? Let me take, you know, the point that I was just about to start answering in response to your question. And the problems in the instruction are twofold, and they go to each of the elements that Cheek outlined as being the essential components. The purpose element has to do with this being a specific intent crime, and our basic submission is that no part of the instruction ought to have been given in light of this Court's opinion in Pierre unless it was clearly limited to facts. Now, I am not saying that a willful blindness instruction cannot be given in a tax case if it is clearly limited to a fact or to facts. But what Pierre says is that mere knowledge that a result is substantially certain to follow from one's actions is not sufficient to form specific intent or willfulness. Correct. And in Pierre we're dealing with third parties and what their specific intent is. Here we're dealing with the party in the Court. And isn't that a world apart? Isn't that a tremendous difference? I don't think it makes a difference. And the point I think that Pierre was trying to make, Judge Roth, is this. Even a certainty that something is bound to occur is enough for knowledge of that fact, but does not translate into the conscious purpose to achieve that end. If I were to give you a hypothetical that comes out of the statute in Pierre, for example, where the issue was did you have the intent to inflict severe pain on the torturer? Would the jailers in Haiti have the intent to withhold a liquid diet knowing it would cause pain? To me that is so much farther afield that I don't see the applicability to where we are dealing with the intent of the person in the courtroom. Well, let me try to get at it from this way. In Pierre, one of the issues was if knowing the certainty of the outcome could be equated with purpose, then willful blindness could be adequate to meet the specific intent of that statute. But remember the facts there in Pierre. I mean, it really makes sense what Judge Roth, or it makes a lot of sense to me what Judge Roth is getting at. You have deplorable conditions in prisons in Haiti, and the fact that you know that these deplorable conditions may cause pain to someone in the condition of Pierre is sort of an afterthought because you're not going to change the conditions of the prisons. Here it's a very different set of facts because you're talking about not third parties in another country, in fact. What you're talking about is what this defendant standing charges in this trial, whether he was willfully blind to actions that he was taking such that one could at least infer knowledge. The issue, Judge Ambrose, with all due respect, is whether a willful blindness instruction can be given with respect to the purpose of a specific intent requirement, any specific intent requirement. It certainly can be given with respect to knowledge, can it not? Knowledge of facts, yes. Now the second point of my argument is that it may not be given with respect to the cheek element of knowledge of law, and I'll get to that in a second, but just to close the loop on whether it matters that you're looking prospectively at what will happen in Haiti or whether you're looking at the person in the courtroom. If you had a criminal trial for torture, and the statute at issue in Pierre happens to be a criminal trial, 18 U.S.C. 2340, you would have the same intent issue. And if you had the defendant in the courtroom, you could have the identical issue, may his specific intent to inflict severe pain be proven by willful blindness. Now the question in Pierre was, does even the absolute certainty that that sort of pain will be the outcome, does that equate with the purpose to achieve that end? And just a simple hypothetical I think would demonstrate why it cannot. You have a defendant in trial for torture, and he is accused to have taken a chainsaw and cut off the limb of the victim. He clearly, given the nature of the actions, had a certainty that he would be inflicting the level of pain that is of concern in the Pierre opinion, both under the CAT and the immigration context and in the criminal statute. Change one fact, is a field doctor in the Army, the victim, so to call, is dying. The only way to save his life is to cut off that leg. The doctor knows to a certainty that the exercise with the saw will inflict the level of pain that the torture statute does say is actually called for. Yeah, but that's for the purpose of saving a life. But he does not have the specific intent precisely. But in Pierre, it has a very different purpose that it probably would cost the person his life in those circumstances. Let's take a hypothetical. Let's say that you have a defendant who claims an obviously improper deduction. Trip to Hawaii for a honeymoon, he takes it as a business expense. And he says, look, there might have been a probability that that was wrong, but I didn't know about it. Anybody tried to tell me about it, I wasn't really listening. It sounds to me like under that set of facts, clearly that person could still be in trouble for evading the tax laws. Could he not? I am not sufficiently clear on what the it in your hypothetical is, your chamber, to actually answer the question yes or no. If he were under some sort of apprehension that he failed to acquire actual knowledge that this was contrary to the law, that person under cheat would not be guilty. He's actually far more reasonable than the tax. You better not do that. That sounds like a real problem under the tax laws. He goes, don't tell me. Don't tell me. As far as I'm concerned, I think I can do it. I'm going to do it. I think we have moved from the discussion that I started out on whether the willful blindness instruction is consistent with the purpose prong of cheat. And we have moved into the knowledge of the law aspect. My concern is the way that I think that your brief appears to be reading cheek, that the consequences of your reading could cause problems elsewhere. I mean, to me, it's you have a knowing prong. You know certain facts. And then you have that you willfully intended to, after you knew those facts, to redeem to know those facts, willfully determined to violate the law. And I thought what your argument was that, yes, maybe this willful blindness instruction, it may relate to knowing, but the court specifically used the word willfully in effect to deal with specific intent. We have both arguments. And as I said, they are both equally in front of you, and either of them would be enough to return this verdict. But then my question is, when you look at pages prior to 3973 and 3974, it looks like on 3965 and 3972, the court really is trying to say to the jury, here's what willfully means. And it looks like the court, at least it appeared to me, that the court was defining willfully correctly. And all that happened here, when you had the willful blindness instruction on 73 and 74, is that a couple of words, the words and willfully, got dropped in there by mistake. That is not so, Judge Ambrose. And you may be right. And the reason for that is that, you know, the government's argument, which this is somewhat of a variant of, is that the jury got many good instructions on actual intent. And that was one of them. And, you know, the fundamental problem with any argument of that nature is that the jury could have been given every perfect instruction on option A and a wrong instruction on option B. And so long as the jury was told B was as good an option as A, they were free to convict solely on the willful blindness instruction. So that the entirety of the instructions, if you look at it from the point of view of the jury, became irrelevant the moment that they were told that merely having this state of mind, which is some sort of a subjective form of negligence, was enough for the conviction. And for all that the government goes out to minimize, you know, the appearance of the end willfully on the theory that it was only two words. In fact, it was the summing up paragraph of this key instruction in the case in an issue in which intent was the issue. And in addition. But on 3965, the court said, defined willfully. I mean, it's actually defining willfully as requiring proof, quote, that the defendant voluntarily and intentionally violated a known legal duty. Now, that's a correct instruction, is it not? As far as it goes. And the problem is that then you say, but the way you can fully satisfy your burden, and let me read it to you. This is from 3974. Therefore, you may find that the defendant acted knowingly and willfully, which is what. And what I'm saying to you is willfully. I agree with you. That's a problem. But wasn't it just an inadvertent problem? And when you look at the totality of this of this instruction, when you've got what I just quoted to you from 3965, and then you also look at 39, I think it's 72, where the court says. You must show beyond a reasonable doubt that Stoutmire, quote, acted with knowledge that the income tax returns in question was false or fraudulent as charged. And two, that he acted willfully, which he defined then as acting, quote, with a purpose to disobey or disregard the law. Your Honor, I take your point, as I explained earlier, that a set of instruction was given under one alternative for conviction that may have been accurate. My issue is not with that. My issue is with the supposition that this independent alternative would be imported into the independent alternative number two. Let me read you, please, how the jury heard that last sentence, you know, the therefore sentence. Yes, sir. Therefore, you may find that the defendant acted knowingly and willfully, which is exactly, you know, the subject of all of these definitions that we have been discussing. If you find beyond a reasonable doubt either that the defendant actually knew that the tax returns were false or fraudulent as to a material manner, or that the defendant deliberately closed his eyes to what he had every reason to believe. And therefore, all that the jury needed to find is you may find that they acted knowingly and willfully if you find that the defendant deliberately closed his eyes to what he had every reason to believe. And my question is, if you deleted the words and willfully, would that be an okay instruction? It would not be. It would not be? It would not be. It would fix this problem. Now, we haven't actually finished actually talking about the knowing part of the instruction, if I could go on. And I think that in order to understand what is fundamentally wrong with the knowing part of the instruction. Patrick, why don't you add two more minutes, please? Thank you, Your Honor. And the difference between knowing facts and knowing law, you need to really think about what the origin of a willful blindness instruction is in federal cases. We got them first in the 1970s in the first, you know, federal widespread narcotics statute. And the leading case at the time was a case from the Ninth Circuit called Jewel. You may recall that it was a hot fight as to whether you could give a willful blindness instruction in a knowing case. There was no objection to a willful blindness instruction being given here, was there? Oh, yeah. Oh, yes, sir. Let me come back to that. But the references on that are we filed a 12-page brief that starts at Appendix 1133 and goes on for 12 pages. And when we came back to the colloquy, which is at 3905 to 3907, we said expressly that after the government tried to change the proposed instruction, that it was still objectionable for the same basis as outlined in our brief, that it was no better. And the court simply said, I understand that. Just tell me anything that you haven't put in your brief. So there is a 12-page brief that we put in. Hang on for a second. You're saying that a willful blindness instruction should not have been given here at all? At all. At all. But wasn't the defense theory that Stottmeyer was simply not involved in the preparation of the returns and instead completely relied on the accounting firm? Yes, it was. And if that's the case, then doesn't that sort of lead to, if you're going to try to convict him on those charges, that he was willfully blind? For the answer to your question, I would direct you to the analysis of willful blindness in Judge Posner's opinion in the Giovannetti case. Right. Which is cited in the papers. How about our Stewart case? Well, but it doesn't deal with a question where the defendant has to have actual knowledge of the fact. There in Stewart, the defendant said that, look, I didn't commit fraud or money laundering because I relied on the solvency reports of state examinations. And we said that the trial evidence justified a willful blindness instruction there. That seems to be, by analogy, a pretty decent case for it to be here. Your Honor, let us make very clear as to when an instruction would be appropriate in a case like this. If the government's case were that there was no roofing work, that there was no proper deductions, and that all of the invoices were, in fact, forgeries and were fraud, not unlike the Gourary case in the Second Circuit, and there were evidence that he took affirmative steps not to find out for sure that these things were forgeries and were bad, of course an instruction would be appropriate. But as Judge Posner pointed out in the opinion that I pointed out to you, on the question whether an instruction is warranted as a matter of fact, you really have to distinguish the person who is uninquisitive from the person who takes affirmative steps not to gain knowledge. And his hypothetical is in a drug-type case of that, or actually it was a gambling case, if the prosecution's theory is that this house of gambling was just down the street from where he lived and around the corner, the prosecutor could not rely on the fact that he did not turn the corner unless that was his usual route. However, if the house was on his same block and he went the other way, he took affirmative action to avoid gaining knowledge, that would be a basis for a willful blindness. And my point here is that the most that the government had on the factual point was simply that he failed to gain knowledge of the law. Now, we've been talking here about whether as a factual matter this could be given. And I haven't finished dealing with the question of whether as a legal proposition, willful blindness may be appropriate as to the knowledge component as to law. And the point I was going to make about JUUL is that JUUL stands for the proposition, and you can look at then-Judge Kennedy, now Justice Kennedy in his dissent. The conclusion in willful blindness cases, including the cases in this circuit, is not that willful blindness is knowledge. The holdings are that it is a condition of the mind, a subjective condition, that describes a state of culpability that is comparable to knowledge. And that's key in this case in the tax area, because if you look at Brody, you look at Warts-Ruiz, you look at Rolls-Royce, what the court says is that this is a state of mind that is deemed to satisfy the statutory element of knowledge. In your own opinion for the court in Corozian, the language you use is, this is a rule that, quote, allows the jury to impute knowledge. It almost seems like, and maybe I ought to get to the Britski point, or argument you wanted to make. It almost seems that you're asking for us to make a per se rule with respect to knowledge. I don't see that as a reading of cheek that's required of us. Well, I disagree with you, Your Honor, because I do think that a rule that is applied in every case under theory that is deemed knowledge and imputed knowledge does not satisfy what Cheek said is actually required in this unusual statutory context, which is unlike every other context in which the knowledge of the law is never relevant, which is actual knowledge of the law. I'm taking a look at this willful blindness instruction and realizing that you say you don't think it should be here. Where else in those eight paragraphs do you think there was such a misstatement of law that the court was in error? Once you got any notion of this applying to the law, and so that the fact or circumstance could extend. Why don't you point it? Do you have 3970? Do you have the instruction? Yeah. Oh, let me find it. Where would you? Every part, Your Honor, and I think there's several, where the court said that the instruction could extend to whether the returns were false or fraudulent as to a material matter. But I'm looking at the first paragraph, the element of knowledge. Mr. Ambrose, would you get closer to your microphone, please? Yes. Thank you. What I'm looking to is, let's start off the very first paragraph. The element of knowledge on the part of the defendant may be satisfied by inferences drawn from proof the defendant closed his eyes to what would otherwise have been obvious to the defendant. Finding beyond a reasonable doubt of a conscious purpose by a defendant to avoid knowledge that the tax returns at issue were false or fraudulent as to a material matter. First one, that whole sentence is wrong. Would permit an inference that he had such knowledge? Yes, sir. And that's wrong because? And the reason that is wrong is that, you know, the jury could only infer that the defendant's, that the tax returns were false or fraudulent as to a material matter by factoring in what the prosecutor concluded was a mixed question of law and fact. You know, keep in mind, you know, the types of things that were the grist of this trial. Take a look at the next paragraph, which is just one sentence. Stated another way, the defendant's knowledge of a fact or circumstance may be inferred from his willful blindness to the existence of that fact or circumstance. Do you have a problem with that? Yes, I do. Of course, Your Honor. I have a problem with every paragraph of this instruction because every paragraph of this instruction refers either to the willfulness part or to the supposition that whether a tax return is fraudulent is a question solely of fact. And in a case in which the government was required to prove beyond a reasonable doubt that the defendant had actual knowledge of the legal requirement, you cannot put to the jury the ultimate question of legality under a willful blindness standard. That is a, I mean, we can go through each and every one of the paragraphs. Mr. Estrada, I think you're making an excellent argument, but I'm not sure that I saw that in your brief. It is both in our opening brief, Judge. Well, I'm talking about this general, like Judge Ambrose, I felt that that one use of the word willfully was the issue that you were hanging your collective act. But now I'm going to ask, your objection, your objections you're making now, was, well, that was an objection made to the court to this particular instruction? It was, let me, yes, but let me tell you how it came around so that it will be perfectly. I wasn't sure that I found that. Yes, I would direct the court to appendix pages 3905, that's where it begins, and it ends at 3905. Just a minute, please. I'm getting that. 3905, now where, please? I actually need to get my actual copy. Patrick, why don't you add ten more minutes and then we'll close it down after that. Bear with me, Judge Alderser, just a second while I find the page. It actually begins on page 3905, and you can see about the middle of the page, right hand, is where the colloquy gets started between the prosecutor and the court. The background for this is that the previous day, the prosecutor had raised this issue of willful blindness, and overnight, we had filed a 12-page brief that expressly relied on cheek, and in addition made the two points that, A, a willful blindness instruction had to be limited to a question of fact, not of law, and, B, I think Judge Alderser's point is, in your briefing to us, other than the words, and willfully, where you hang your hat, where else are you making the arguments that you're now making today? I, you know, we made all of these arguments, Judge Ambrose, in our opening brief and in our reply brief, and in fact, in our reply brief, when the government tried the it's only two words, please let us go argument, we pointed out that the essence of our objection was that the giving of the instruction at all, with respect to any legal aspect of this case, was a violation of cheek, and there is a paragraph in the discussion in our reply brief that points out to the use of the word fraudulence and false and expressly makes the argument that every paragraph, this is how we put it, every paragraph of this instruction suffered from this defect. It is in our reply brief, it was also... That is in pages, this is a different volume of the appendix, Your Honor. As I started saying, that is at pages, appendix 1133 to, I think it's 1145, and as I started saying, this was a brief that we filed the night before, and if you look at the colloquy that we have been discussing together, Judge Linares expressly adverted to the brief and invited counsel to put only those instructions, excuse me, only those objections that... Excuse me, I want to follow you, sir, I want to follow you in the appendix. You referred to page 1133? Yes, we had submitted the previous night a 12-page brief on this question, the fact versus law, and we made it very clear, excuse me, Your Honor. I mean, it's 12 pages, but the argument is expressly made that this had to be limited to a question of fact, and once we came back to the issue in open court, Judge Linares adverted to our brief, we expressly said that the version then under consideration was no better, we re-invoked all of the statements in our brief, and then the judge, recognizing that this was the case, invited us to put on the record, and this is a quote from 3906. All right, let me stop here right now. Are you now conceding it's okay for a charge on willful blindness if the issue refers to a fact? I am conceding that such a charge is legally appropriate if the facts warrant it. We have always maintained in this case that the facts in this case do not warrant a factual charge. I mean, there are three issues here, Your Honor. The first one is whether a willful blindness instruction is ever consistent with the purpose prong of cheek. The second one is whether the actual knowledge requirement of cheek can be met by an imputed knowledge rule, such as willful blindness. And the third issue, which also is in our brief, is whether even on the assumption that this had been offered as to a question of fact, whether there were any facts in this case that supported the giving of a willful blindness instruction. On the last point, our key argument is the distinction that I adverted to earlier from the Judge Posner opinion in the Giovannetti case, which is in order for there to be a factual basis, a factual basis in any case for an instruction of this type, there has to be some evidence that there was affirmative conduct or something that was merely beyond failing to inquire. That's our submission on each of those three prongs. There are three different and distinct problems with this instruction. That's why it should not have been given at all. Here is my difficulty, sir. I appreciate it. I know you by reputation. You're one of the outstanding appellate lawyers in the country. Thank you. But you know what we are, the argument that you are making, the argument that you are making that all of this was wrong, and then when I ask where this was raised at trial, you refer us to page 1133 and to a brief that you filed the day before, but that brief is not in the record. They're not in the appendix. The brief is in the appendix. Sir, my point is that, first, I was a little surprised at the emphasis on all of the charge, knowledge as well as law, and I then have to think that if I'm accepting your argument on the broad The question is, where was it raised before at trial? Because upon that stands the standard of review, whether it was error or whether we would have to go into plain error. So that's the purpose of my inquiry, because I think it's very important that if I have difficulty finding the answer to whether it was raised at trial, if the issue is important, the objection has to be important for us to see it. Do you understand what I'm driving at? Absolutely, and I may have failed to make myself very clear. We submitted an objection that was briefed on the record. This was a filed brief that the court had before him and the court adverted to our brief and invited additional objections, and I am quoting here now from page 3906 around 29-144. And with Judge Linares having understood that we had briefed these objections and that we had just stated that our objections stood, no withstanding a few cosmetic changes. Can you give me where that is? Is that 142, 143, 144, or 145? There are four pages on A3906. And the page is indicated in the upper right quadrant? Yes, and the page is indicated in the upper right quadrant at 29-144. Okay. So if you look at page 3905 when we open the discussion of this, and this is the left side quadrant, bottom quadrant, when the court hears from defense counsel first, Ms. Rule is one of the defense counsels, and what she says is, do you object to this? And she says, yes, Your Honor, for the reasons stated in our brief. And then, you know, the court goes on to say at 3906 after a brief colloquy, fully understanding that we had briefed our objections at 29-1144, this is the next page and is the upper right quadrant this time. The court says that he was expecting exceptions and objections to be put on the record, quote, other than has already been stated in your brief. Even so, we went on to point out that this was inappropriate in a tax case and that there was no factual basis for it, which were two of the points made in the brief that we had submitted. But of all of the arguments made by the government in this case, some of which are quite interesting and innovative. You know, the notion that this could be forfeited just cannot withstand scrutiny. I mean, it is rare in the heat of trial that an objection is so important that counsel takes the trouble to go home at night and write a 12-page brief, which is actually pretty good advice. Although, as I understand with this law firm, that's what it typically does, and it's very good at it. I mean, that's why they had this law firm involved. Well, people are entitled under the Sixth Amendment to competent counsel. Not only are they entitled, this is an exceptional firm, and they did it. But my understanding has always been this is a typical way of operating with this exceptionally good firm. Which makes it all the more impossible that this objection, which was so important to the heart of the case, could possibly have been forfeited. Why don't we hear from Mr. Sanders on this point, and then we'll get you back on rebuttal. Thank you, Your Honor. Thank you, Mr. Strong. Mr. Sanders. Take a guess as to which of the five arguments we want you to start with. Why don't you state your name for the record first? My name is Stephen G. Sanders. I'm an assistant United States attorney, and I represent the appellee in this matter. And by the way, rather than note it at the end, I'll just note it now that when this argument is over, if you would check with the clerk's office and arrange for a transcript to be prepared of this oral argument and have the cots split. We'll be happy to do so. Thank you, sir. I have a one in five chance of guessing the issue. Let me start off with the preservation issue. You're going to have to speak louder so Judge Alderser can hear you. I'll be happy to. Let me start off with the preservation issue. And I can't say it strongly enough. In this case, it's great that we have a filed brief on the docket, because if you go to those ten pages, and I put them in my supplemental appendix at pages 1137 through 42, because those are the pages that the defendant cites to support his claim that he objected to this instruction on the ground that, and willfully, was inconsistent with the intent component. Page 1137, where it says there be a deliberate ignorance charge as improper as a matter of law, or where? I'm talking about my supplemental appendix. I'm looking. Supplemental appendix at what page, sir? My supplemental appendix at page 1137. That is a copy of the brief that Mr. Estrada referred to. Right. We have that before us. Okay. That's a great thing. Because you have in writing, you have the four corners of that document, and then you have on the record defense counsel saying we are re-raising what we raised in our brief plus what we say here. What they said in their brief never articulated. I think what he's saying, he's raised it there plus what was said at the colloquy. Exactly. And what they said in their brief never articulated this argument based on Pierre, which is not surprising because Pierre came down a day after this trial concluded. But they never argued that the and willfully or any language in the entire willful blindness charge contradicted the intent component of willfulness. Their arguments in the district court were twofold, that it was inconsistent with the knowledge component and that there was no factual evidence in this record that he deliberately avoided learning his legal obligations. Those were the two arguments that were raised below. And that seems to be, to some extent, what Ms. Rule was arguing before the court on the colloquy. Exactly. Let's just back up for a second. On the knowledge element that you should not give a willful blindness instruction with respect to knowledge, as was given on pages 39, 73, and 74, let's just start off with that. Do you agree that the words and willfully should not have been in that particular instruction? I agree they should not have been in there because our entire intent, after we got the brief objecting to the instruction to the extent that it referred to knowledge of the law, we said that's not really our willful blindness theory if we're going to argue it. Our willful blindness theory is that he's claiming or he's going to claim in his summation that I don't know that these fraudulent deductions, which I know were on the books and records, that went to the accountant. Now, just a dumb question. Did the prosecution see this instruction before it was actually given? Well, we were the ones who revised it. But you didn't take it? Why are the words and willfully in there, then? It was a mistake. It's a scrivener's error. But it's not – I mean, first of all, the plain error standard will apply to the intent objection that Mr. Estrada spent a lot of time on. He has preserved his argument that it's inconsistent with the knowledge component, but we have several circuits going the other way. So he's asking you to create a circuit split on that issue. Why don't you address his argument, then, that you should not even have a willful blindness instruction with respect to knowledge? Knowledge of law or knowledge of facts?  Knowledge of facts. If you look at my briefing, I think in .5B, subsection 1, I addressed that issue. The questioning of Mr. Berkritzky – not Berkritzky, I'm sorry. The questioning of Mr. Benslin basically was how many returns did he sign? How many returns did he sign? How much time did he spend on it? He really didn't look at it, did he? That's almost – in fairness, he didn't review those returns, did he? So that's a testimony, and he elicited similar testimony from Mr. Lefkowitz, who was also a CFO for a very short time. And in summation, I'm just going to quote one of the three arguments that was made by Mr. Fink. The prosecution has contended that Richard Stadmauer should have known, just by glancing at the tax returns during the course of signing 800 returns, how all of those items on each returns were treated. So that's at page – appendix page 4135 and page 72 of the transcript, if you go by the four quadrants. So that evidence plus that argument easily allowed us to argue, which we didn't do, by the way, even though this argument was made. So here's the argument. I may have known what was on the books and records of the partnerships that went to the accounting firm, but I didn't carefully look at those returns. But our entire theory of this case was that he knew that the financial statements that went to the accounting firm, the Schoenbrand firm, were fraudulent, were wrong as a matter of tax law. And that unless the Schoenbrand firm, as he claimed in his defense, was supposed to recharacterize everything and put it in its right place, he knew that those tax returns were going to be fraudulent as a material matter. Now, here's why a Wolf of Rhineless Instruction could even be more appropriate in a case like this because he's sitting there with documents. He knows, for instance, Elmwood Village, from his own internal review of the documents, has made a $400,000 profit during the year. He's looking at documents every day. He's going to meetings where he knows that that's the profitability of that partnership. But a tax return comes. Knowing all he knows, he doesn't sign it, but he sees it claims a $200,000 loss. Now, he may not know each specific way that that return is fraudulent, but he knows that his legal duty is not to intentionally file a tax return he knows is false in order to mislead the IRS. That's his duty. That's the willfulness. And we have plenty of evidence of consciousness of guilt, things that defendants don't do unless they know they're doing something wrong and intending to violate the law. So I know I've sort of... Okay, what about the law? The willful bondage instruction? I think for the same reason... I take it your argument is that the district court's instruction did not apply to the law. Is that correct? No, I'd say the government didn't offer this revised instruction with the intent that it applied to the law. If at all, it was only supposed to apply to whether he knew the specific, what was on the returns when he signed them. So he would willfully blind himself to the fact that an expenditure from one partnership was falsely represented as a deduction of another partnership, regardless of his knowledge of the tax code. That's one. And a more glaring example is an expense not from one partnership, but having nothing to do with any real estate partnership, like the $10,000 or $20,000 that was spent for the political consulting firm to research a comeback for Benjamin Netanyahu. What does that have to do with running Elmwood Village? But wouldn't he, for example, have to know, be familiar with the tax code, for example, when an improvement must be capitalized as opposed to expense? He would have to know that, but that's number one. It's just one-fourth of our case, maybe one-fifth, if you count the school tuition reimbursements as a separate part of the contributions claim. But, and that may be true if one or two expenses are treated improperly, but here you have tax return after tax return after tax return where nothing, nothing, no matter how clearly a capital expenditure is, entire roofs, entire sidings of buildings, new windows, and entire units are expensed. And you're starting here. Mr. Stadenhauer is not the average citizen caught up in the complexities of the tax code. He's not the sort of person that the Supreme Court had in mind or Congress had in mind in saying that the willfulness requirement required this special heightened mens re. He starts off with a CPA, with a law degree, and with his nose buried so deep in these books, if you look at the testimony from everybody, they're talking about how detail-oriented it was, how he would question, you know, the cost of a light bulb at a meeting. But looking at the willful blindness instruction, it looks to me, or not to me, but it looks, you could argue that the district court's instruction, which referred to knowledge that, quote, the tax returns at issue were false or fraudulent as to a material matter. That seems to be tracking the statute, 26 U.S.C. 7602-2. And doesn't that confirm that the instruction applied to knowledge of the law as opposed to just facts? We don't, Your Honor, we argue that the jury wouldn't have understood it that way. The element of knowledge, and by the way, in this case. And why not? Because the element of knowledge was separated out. And, in fact, I've gone back and researched this. I haven't found any other jury instructions that did this, where you had, as the first element, that the tax returns were false and fraudulent as to a material matter, element number two, that the defendant knew they were, and element number three, that the defendant acted willfully. So we sort of added an extra element of knowingly. But that element, when it talks about fact and circumstance, and later in the instruction, material items, the jury, taking that instruction as a whole, would have understood it, we think, as applying to knowledge of fact only. But even if they would have understood it as applying to knowledge of the law, for the reasons we cited in our brief in relying on out-of-circuit cases and the policy reasons this Court has cited by not letting people deliberately close their eyes when they strongly suspect criminality is afoot, and they don't take that last step, they sign the certification on the tax return, but they don't, according to the certification, read the return or read the schedules that are attached. That is a classic example of someone who shouldn't escape liability for their misconduct. And I want to add, there was an advice of account and defense here, which was charged correctly. There was a good faith defense that was charged correctly twice. And we know the jury rejected the advice of account and defense because they would have acquitted him on all counts, presumably. So we know that this entire defense was about did the accounting firm, did Mr. Stadmauer in good faith believe, no matter what he knew about the state of the records when he handed them over to the accounting firm, did he really believe in good faith that they were going to take everything and recharacterize it and put them in the right boxes? Well, we had charged a conspiracy, we convicted them of a conspiracy, and it's highly unlikely that the jury that found that he specifically intended to participate in a conspiracy didn't find the specific intent necessary to commit those acts in furtherance of it. Is it your argument from that, that although the expression Ann Wilfley was inadvertently not objected to and contained in the charge, when you consider the 82 pages of the charge, you cannot say that that was reversible error? That's exactly what I'm saying, and I go one step further. Mr. Estrada referred to this as an important paragraph, the Ann Wilfley paragraph, because it said, therefore, but first of all, it says you may find it. It doesn't obligate the jury to find it. Number two, it says it is entirely up to you whether you want to find that he deliberately closed his eyes, and it's up to you to decide what to do with that. It didn't compel them to return a finding on this theory, and it wasn't argued in summation. We argued actual knowledge. We had all sorts of evidence of consciousness of guilt in this case and evidence of filing returns correctly when it was in their interest to do so, and that is powerful evidence that courts have routinely cited in cases, especially with people of that kind of background, with a CPA, with a law degree, who are deeply enmeshed in the records that are more than sufficient to satisfy the intent component of wilfulness. You want to address Pierre? Because I think in your brief you argued that Pierre doesn't necessarily address willfulness, but specific intent, isn't that willfulness? I didn't understand your argument. It's a specific intent, and willfulness is a type of specific intent, but as Mr. Estrada said, it's one thing to have specific intent as to a result, but it's another thing to know your legal obligation or to be deliberately blind to your legal obligation and deliberately proceed in face of it. If you know the law and you proceed anyway, in most circumstances you're acting intentionally. And by the way, this jury was instructed that the defendant, you may presume that the defendant intends the normal consequences of the acts that he does knowingly. So my argument really is that Pierre was limited to the Convention Against Torture, and that is what this court held. This mere knowledge that result is substantially certain to follow from one's actions is not sufficient to form the specific intent to torture or to satisfy the specific intent requirement in the cat is on page, if I can find it, 190 of this court's opinion at 528F3rd. Can you hold it a minute, sir? And what page is that again, please? It's page 190 of this court's opinion in 528F3rd. Willful blindness can be used to establish knowledge, but it does not satisfy the specific intent requirement of the Convention Against Torture. Now, this ties into our argument about this is on plain error review for this aspect of the claim, because we do not read a just sighting to cheek in a written brief that spans five pages as encompassing an argument that this instruction was inconsistent with the intent component of willfulness. And that's what the argument in Pierre is based on. They're trying to bootstrap into their preserved claim that it was inconsistent with the knowledge component. It's an additional claim, and what they think now is a better claim based on Pierre, which wasn't available to them at that time. And while it may be under plain error review, and it's plain as of the time of appellate consideration, if you think that Pierre applies, it's, as Judge Aldister said, an enormous difference in the standard review on the third and fourth prongs. And under those prongs, Mr. Stadmayer cannot possibly bear his burden of establishing that these two words in the instruction change the outcome of this case. Let me, if there's nothing further on willful blindness, let me just ask you a couple of questions on the issue relating to Boresky's lay opinion. He testified as to what he believed his understanding was when there was the question from Stadmayer, did you review these returns, and he said yes, and he said his understanding was X. Given that he testified as to the basis for his belief that Stadmayer knew the returns were fraudulent, how was this testimony helpful to a clear understanding of a determination of fact under Rule 701? Because he was explaining his answer, which is a critical distinction between this case and Ederstow and Polishin, which, Your Honor, you wrote that opinion, which are cases about gratuitous, I mean, in one case it's a speculation by a testifying witness. He must have known. I had no reason to believe he didn't know. And in Polishin, I believe it was a document that said this kind of fraud couldn't have gone on without the defendant's knowledge. And so that's what went on in Polishin. Here, the question is being asked, are the returns okay to sign? O'Kriski says, I signed them. So we wanted him to interpret his answer. What did you mean by that? I meant that I had ñ I knew there were problems in returns. There were problems in returns that we both knew, not that he must have known. But it appeared from the summation that was made by the government, actually at the very end of summation, that it emphasized O'Kriski's testimony on this. And it would seem that this was a pretty important point for the government. This was his understanding, O'Kriski's understanding, that Stadmayer knew he was violating the law. Well, the answer was knowledge of problems in the returns, not that he knew he was violating the law or had committed a crime. Number two, it was at the end of the government's opening summation that Mr. Eicher stressed that testimony. But at the end of the rebuttal summation, right, Ms. Honig goes to that testimony, but she does not stress the opinion part that they find objectionable. And I think we have to, if you're going to find that it was erroneous and we don't believe it was, the harmless error question has to be, how would this have trial proceeded in absence of this error? And here's what would have been a perfectly permissible question, answer, and argument to the jury. Are the returns okay to sign? Yes, I signed them. What did you mean by that? I meant I knew there were problems in these returns,  to avoid raising red flags with the government. Then on summation we would be perfectly entitled, and Anders Gau makes this point, we would be perfectly entitled to argue, which is what Ms. Honig did, why is Mr. Stadmauer asking his paid accountant, who he claims is paid to do everything right, are the returns okay to sign, and why is the accountant, instead of saying yes, saying, well, I signed them. So two people in a conspiracy who are talking to each other who know what they've been doing with each other, even though they don't say it out loud. This answer by the Krispy helped the jury understand what he was thinking. So even if we take the improper opinion out, we still would have had a powerful argument based on the circumstantial evidence. And by the way, as I stressed in my brief, they had poisoned the well on their cross-examination of Mr. Benson. Long before this happened, they got Mr. Benson to give far more damaging opinion testimony than this. And so my argument wasn't, according to their reply, that this wasn't important. I said that they had already gotten an opinion from Mr. Benson, who I think is more damaging because he wasn't cooperating, and he knew less than Krispy knew. He's not a tax expert. And here you have one of his own subordinates saying, of course I didn't warn him not to sign the returns. He knew the stuff that was in there. Between the meetings, the lose the bill, between this and that, he said he had to have known, so I don't have to tell him not to sign the return. So once that testimony is in the record, you can't claim that this additional question and answer is what made the difference in this trial. I have no further questions. Judge Roth? Judge Alderser? No questions. Thank you, sir. We ask you to affirm the judgment. Thank you. Mr. Estrada, you have five minutes, and we're going to have to keep you to that because Judge Roth has an appointment this evening that needs to be made. Well, let me do two things. First is on the rebuttal aspect of the willfulness. Let me say that there is a fundamental failure to appreciate on the part of the government the difference between a harmless error standard and a Rule 29 standard. Time and again, you know, the argument being made here is that they had two pieces of evidence, maybe three, that to a properly instructed jury might have been argued to show that this person knew the tax law and intended to violate them. And that's quite different from saying that there is proof beyond a reasonable doubt so that any rational jury would have come to this conclusion. And we did not have a two-month trial on the question of intent where the whole issue for the defense, this was the defense, was that he was in charge of the business and he knew lots about the business and he knew some about the money flow in the company, but he was not in charge of the taxes. It is a nullification of the entire theory of the defense. As I understand what the government's argument here is, that any error with the use of these two words, and willfully, that it almost seems like it's threefold. One, you can certainly, our case law says, you can look at the instruction as a whole and not just to one particular sentence or one particular paragraph or even a couple of pages. This was a lengthy instruction. Secondly, at the beginning of the instruction with respect to count one, which is the conspiracy to defraud the United States by filing the false tax returns, the district court defined willfully, as I noted before, consistent with Cheek, I think, as requiring that the defendant voluntarily and intentionally violated a known legal duty. That's on 3965. And then it seems that the court goes on and instructs the jury that he believed in good faith that the tax laws did not make his conduct unlawful or that his belief it need not be reasonable so long as it was honestly held. Then it goes on with counts two through 18, which is the substantive counts here, and the courts addressed that the elements of knowledge and willful, or it seemed to address the elements of knowledge and willfulness separately.  reasonable doubt that Stottmeyer, quote, acted with knowledge that the income tax return in question was false or fraudulent as charged. And two, that he acted willfully. And it defined willfully as acting, quote, with a purpose to disobey or disregard the law. And again, that's on 3972. And I will say again, Judge Ambrose, with all of the respect I'm capable of, I believe your questions, while correct in their statement of the record, are misdirected. Because the question here is. I think I'm just sort of repeating what I think, what I understood the government's argument. Yes. And the government's argument boils down to the proposition that if I give you a delicious plate of food on this plate and a plate of poison in this one and you eat both, it doesn't really matter that I gave you a plate of poison because, oh, geez, you know, there was a lot of good food on that, on that first plate. Now, you cannot pick up the meaning of willfulness based on the earlier instructions because that, therefore, sentence told them that all they needed to know in order to find that willfulness was fully and completely satisfied was that he close his eyes. That's the fundamental problem with the case. And just so that I don't let go, you know, this notion that the government keeps propagating that this is all about plain violations of the tax laws. I just want, you know, the court to understand quite clearly because I know this is a very complicated record, that a lot of the fight in the district court was whether you should capitalize or expense based on what the relevant unit of property was. That was part of it, but there were a host of other things that were argued. But of course. And the question is who is the proper defendant for a tax offense? I mean, I don't have any issue with the fact that Charles Kushner pled guilty and went to jail. And what happened very conveniently after that was that several of the 302s that, you know, the government witnesses had given and used to recite that Charles Kushner did all these things now miraculously became Richard Stadmauer did these things. That's one of the other arguments. Well, I understand. But all I am conveying to you is that this was not a two month trial because it was a frolic and a detour. And I understand and I hear you loud and clearly that you don't want to up end a two month trial, but those are your words. I'm just, I'm just saying that the government's argument is that you look to the instruction as a whole. And you certainly do. And the question is, did the use of the words and willfully and perhaps what other things that you claim that were incorrect. If we agree with you in the willful blindness instruction, did they so taint the charge that we should send us back? Yes, they did because it boiled down the entire charge of what the jury needed to find to a single sentence. Everything else was irrelevant. And I think my time is up. Thank you very much. Thank you to both counsel for extremely well presented arguments. We'll take the matter under advisement. And I would ask if we could clear the court fairly quickly because we're going to do a conference here in the courtroom. We'll take a five minute break. Be right back. Ruggie, we'll be back within five minutes. All right. That's great. Thank you.